UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN DOE,

                          Plaintiff,

        -against-

DELTA AIR LINES, INC.,

                         Defendant.
------------------------------------------------------------------X

No.: 1:23-cv-931

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, JOHN DOE, by and through his attorneys, Mark David Shirian P.C., complaining of the Defendant, DELTA AIR LINES, INC. (hereinafter "Delta"), respectfully alleges as follows:

## NATURE OF THE CASE:

1. This is a sexual assault case.

2. Plaintiff entrusted Delta to safely fly him home after a vacation in Greece.

3. With no concern for its passengers, Delta blatantly overserved alcohol to an increasingly and obviously intoxicated female passenger, who was negligently allowed to board the subject international flight.

4. When the female passenger began acting belligerently, Plaintiff verbally alerted Delta's flight crew of the situation and requested assistance. He was ignored because he is a male. Instead, Delta continued to overserve alcohol to the intoxicated passenger.

5. The foregoing grossly negligent actions by Delta directly and proximately resulted in Plaintiff being sexually violated by the intoxicated passenger.

6. Plaintiff's appalling ordeal has become all too common in the airline industry. Delta knew or should have known its actions could lead to the harm of a fellow passenger including, but

not limited to, a sexual assault. Nevertheless, Delta failed to protect Plaintiff and discriminated against him because he is a male.

## JURISDICTION:

7.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sec. 1331 and 1332, insofar as there exists complete diversity of citizenship of the parties and the amount in controversy exclusive of interest and costs, exceeds $75,000.00.

8.      At all times material hereto, Plaintiff was a resident of New York and Defendant was incorporated in a State other than New York and have their principal place of business outside of New York.

## VENUE:

9.      Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391, in that Defendant DELTA AIR LINES, INC. has offices and transacts business within the Eastern District of New York, operating regular commercial flights from its assigned terminal at New York's John F. Kennedy International Airport. Defendant, DELTA AIR LINES, INC. regularly and systematically conducts business, solicits business, and earns substantial revenue from business conducted within this district. Moreover, events contributing to the causes of action and damages of sexual harassment and post-assault occurred in this district.

## THE PARTIES:

10.     Plaintiff, John Doe, is an adult male individual whose name and address are not contained in this Complaint to protect his privacy and identity, as he incurred injuries and damages of a sensitive nature as a result of the sexual abuse, negligent acts, and negligent failures to act by the Defendant as outlined below.

11. There exists good cause for Plaintiff to use a pseudonym due to the harmful effects the public disclosure of his identity would have because of the nature of the case, sexual abuse, which includes, (a) enhancing his already existing injuries by the stress and anxiety that surrounds public disclosure of having been sexually assaulted thereby exacerbating their mental injuries and emotional harms; (b) the subject of the lawsuit is humiliating, embarrassing and carries with it a negative stigma; (c) and having his name revealed will cause unwanted personal attention from the public at large. Plaintiff's undersigned counsel will provide the identities of Plaintiff to the Defendant. As such, Defendant suffers no prejudice as a result of concealing Plaintiff's identity in the Complaint and Verification.

12. Upon information and belief, Defendant DELTA AIR LINES, INC. is a foreign corporation authorized to do business in the State of New York, with a principal executive office located at 1030 Delta Boulevard, Atlanta, Georgia 30320.

**FACTUAL INFORMATION:**

13. Upon information and belief, Defendant DELTA AIR LINES, INC. was and is a common carrier engaged in the business of transporting passengers for hire by air and operates an extensive international and domestic network of flights.

14. Upon information and belief, Defendant DELTA AIR LINES, INC. employs a flight crew responsible for the safe and secure operation of its flights as well as the safety and well-being of its passengers.

15. On or about August 1, 2022, Defendant DELTA AIR LINES, INC. operated and controlled a certain aircraft, designated as DELTA AIR LINES Flight No. 203 (the "subject aircraft"), from Athens, Greece non-stop to New York's John F. Kennedy International Airport (JFK) (the "subject flight").

16. The subject flight had a scheduled departure of 12:20 PM from Athens, Greece on August 1, 2022 with an arrival at JFK Airport at 4:15PM on August 1, 2022. Upon information and belief, this flight departed and arrived on schedule.

17. The subject flight was conducted on an aircraft owned, leased, operated, staffed, or otherwise controlled by the Defendant, DELTA AIR LINES, INC.

18. DELTA AIR LINES, INC. was responsible for the training, management, supervision, and/or control of its flight crew aboard the subject flight, including but not limited to the crew's adherence to their own internal standard safety policies and protocol as well as federal policies, regulations, guidelines, and standards.

19. Plaintiff JOHN DOE was a fare-paying passenger lawfully aboard the subject flight and was assigned seat 52J, a main cabin fare, located in the main cabin.

20. Upon information belief, an intoxicated female passenger boarded the flight while visibly intoxicated and was seated next to Plaintiff.

21. Plaintiff was traveling alone, and he was seated next to the aforementioned intoxicated female passenger.

22. After Plaintiff boarded the subject flight, he and the intoxicated passenger made casual conversation.

23. While Plaintiff JOHN DOE was seated on the subject flight, the plaintiff was subjected to sexual harassment and assault by an intoxicated female passenger (the "intoxicated passenger") who, upon information and belief, was permitted to board the subject flight despite being visibly intoxicated upon boarding, and who was then served additional alcohol during the subject flight.

24. More specifically, the intoxicated passenger was wandering around during the flight and was sexually harassing the Plaintiff, JOHN DOE, by making unwanted physical advances.

25. Specifically, while on board of the subject flight, the intoxicated passenger asked plaintiff if she could lay on top of plaintiff, commented about plaintiff's "big muscles", and proceeded to massage plaintiff's neck and caressed plaintiff's inner thigh, which was entirely unwanted and inappropriate.

26. Additionally, the intoxicated passenger falsely informed Delta's staff that she was with Plaintiff, and continued to be served alcohol from Delta's staff under false pretenses while Plaintiff was sleeping during the flight. As a result, Delta's staff negligently continued to over-serve the female intoxicated passenger.

27. Recognizing there was a problem with the intoxicated passenger's drunken behavior, Plaintiff discretely secured the attention of a flight attendant. During the flight, Plaintiff complained about the intoxicated passenger to a Delta flight attendant aboard the subject flight and indicated that he had been inappropriately touched by this female passenger. The Delta staff member apologized and said that he could not do anything about it. Additionally, the intoxicated passenger had previously acted aggressively towards a fellow flight attendant while on the subject flight and the Delta staff member requested that Plaintiff lodge a second complaint at the end of the flight.

28. Plaintiff informed the Delta staff members that he was aware that the intoxicated passenger also took a Xanax while speaking with her friend.

29. The Delta staff members never found a passenger to exchange seats with Plaintiff. Moreover, the Delta staff members discriminated against Plaintiff because of his gender because

they failed to timely accommodate Plaintiff's request to switch seats, or find a suitable alternative. Any other similarly situated female passenger would not have been forced to go back and sit down next to her assailant.

30. Instead, the Delta staff members told Plaintiff to return back to his seat and informed the intoxicated passenger that Plaintiff had made a complaint.

31. Unfortunately, the actions and inactions of the Delta staff members made things worse, as the intoxicated passenger became intolerable. Specifically, the intoxicated passenger would not stop getting in and out of her chair and badgering Plaintiff.

32. Plaintiff was forced to eventually sit in the hallway on a foldable chair because he was unable to sit next to her anymore. Plaintiff was embarrassed, as many other passengers looked on.

33. The Delta staff members finally switched seats for Plaintiff. However, a few moments later, the intoxicated passenger assaulted a Delta staff member.

34. A Delta staff member announced on the flight's loudspeaker and informed all passengers that a passenger (the intoxicated passenger) on the flight took a Xanax and drank too much and that they may have to emergency land in Boston Logan International Airport. They said this three times, and it was very embarrassing. Other surrounding passengers around Plaintiff near his new seat in the hallway kept asking Plaintiff about the incident involving the intoxicated female passenger.

35. The flight ultimately landed at JFK Airport, as scheduled, and the intoxicated passenger was arrested and escorted off of the flight upon landing.

36. Plaintiff was embarrassed and humiliated by the intoxicated passenger's sexual assault and Delta's grossly negligent and reckless actions that directly and proximately caused the same.

37. Plaintiff also believes that the Defendant, its agents, and employees, discriminated against Plaintiff because he is a male, and did not provide timely and proper attention to the aforementioned incidents because of his sex.

38. Plaintiff, who regularly utilizes air travel for business and pleasure, now has extreme anxiety when flying as a direct and proximate result of Delta's actions that directly and proximately lead to the groping.

39. In accordance with Delta Airline's own internal safety guidelines/policies/regulations and two separate Federal Aviation Administration directives, the intoxicated passenger should not have been allowed to board the subject fight:

   a. Title 14 Code of Federal Regulations §91.17(b) – *Alcohol or drugs*, prohibits, "[e]xcept in an emergency, no pilot of a civil aircraft may allow a person who appears to be intoxicated or who demonstrates by manner or physical indications that the individual is under the influence of drugs (except a medical patient under proper care) to be carried in that aircraft."

   b. Title 14, Code of Federal Regulations §121.575 (c) – *Alcoholic Beverages*, "[n]o certificate holder may allow any person to board any of its aircraft if that person appears to be intoxicated."

40. DELTA AIR LINES had a duty to refuse service to the intoxicated passenger on the subject flight under Title 14, Code of Federal Regulations §121.575(a)—*Alcoholic Beverages*. It states:

a. "No person may drink any alcoholic beverage aboard an aircraft unless the certificate holder operation the aircraft has served that beverage to him. (b) No certificate holder may serve any alcoholic beverages to any person aboard any of its aircraft who –(1) Appears to be intoxicated:"

41. *The Guidance on Unruly Passenger Prevention and Management,* published by the International Air Transport Association in 2015 foreshadowed many elements of this incident on the subject flight at pp. 18-19:

> **3.4.1.1 Alcohol Policy.** An intoxicated passenger can become a danger to themselves and others on board the aircraft. . .. Tolerating intoxicated passenger behavior at or in the check-in counter, terminal building, lounges, the gate and on board the aircraft can undermine the airline's goal to offer safe, secure, and superior passenger service to all passengers on board, as well as the goal of a safe work environment for crew members.
>
> Airlines should authorize their ground staff and crew members to deny boarding to passengers where there are reasonable grounds to believe that their faculties are impaired by alcohol to an extent that will present a hazard to the aircraft, to persons on board (crew or passengers) or to the passengers themselves.
>
> Service of alcoholic beverages should be carried out in a reasonable and safe manner. This could include tactfully refusing to (further) serve a passenger alcohol.

42. The International Air Transport Association's 2015 *Guidance on the Safe Service of Alcohol on Board* provides reasonable procedures for the cabin crew to follow ~ but which the DELTA AIR LINES crew on Flight No. 203 did not. The *Guidance on the Safe Service of Alcohol* provides "considerations and techniques for the safe service of alcohol on board." DELTA AIR LINES 203 utterly ignored the considerations and techniques leading to the assault of Aubrey Lane. The International Air Transport Association suggests the following:

- **Engage, assess, and identify**: Engage with the passengers and use the Traffic Light System I order to assess and identify potential risk cases, starting from the first greeting, during the delivery of service, and monitor the cabin.

- **Count Drinks**: If possible, when serving alcoholic beverages, keep track of the number of drinks a passenger has consumed within a certain period of time. (Note that this technique may not be possible or feasible on multi cabin crew operations on larger aircraft, however, communication amongst cabin crew can help with tracking."

- **Communicate and document:** Communicate amongst the cabin crew regarding which passenger(s) may be of concern due to excessive drinking. Document this information either on a sheet of paper or on a company issued electronic device. This tracking could be used in subsequent reporting if the passenger becomes unruly.

- **Know when to stop service:** Discuss with the Senior Cabin Crew Member and fellow cabin crew on when and how to cease service if required to do so. It is also important to always advise the PIC [pilot in command] when a cease of alcoholic beverage service decision will be actioned.

- **If a passenger warning is required:** Make use of the airline's unruly passenger warning card to mitigate and manage incidents requiring this level of intervention. Always advise and consult with the PIC if a warning card will be issued. It is also recommended to have another crew member present to bear witness during the process of issuing a warning card.

- **Common sense:** Use common sense when serving beverages: count beverages, assess passenger behavior, and cease service when appropriate in order to maintain control of the cabin environment.

43. The Traffic Light System referenced by the Association identifies considerations and cabin crew responses that were again ignored on the subject flight and led to the sexual harassment and sexual assault of Plaintiff JOHN DOE.



The Traffic Light System

| Green Behaviors: | Yellow Behaviors: | Red Behaviors: |
|---|---|---|
| • Sociable | Reduced inhibitions | • Moving in slow motion |
| • Relaxed | Impaired judgment | • Slow to respond to questions |
| • Comfortable | Talking or laughing louder than normal | • Glassy-eyed |
| • Happy | Being overly friendly | • Losing train of thought |
|  | Arguing or baiting | • Making Irrational statements |
|  | Increased use of foul | • Spilling drinks |

| | language<br>Increasing alcohol consumption<br>Careless with money | • Walking awkwardly<br>• Stumbling *or* falling down<br>• Unable to sit up straight |
|---|---|---|
| **Consideration:**<br>*The passenger has probably hod little or nothing to drink.* | **Consideration**<br>*The passenger is starting to show signs of alcohol intoxication.* | **Conclusion:**<br>*The passenger has had too much ta drink.* |
| **Response:**<br>1. Alcohol service may be safely provided.<br>2. Maintain situational awareness for any changes to passenger behavior. | **Response:**<br>1. Alcohol service should be slowed or stopped to prevent the passenger from reaching the red level.<br>2. Offer the passenger food and non-alcoholic beverages to slow **down** the alcohol absorption.<br>3. Notify other cabin crew, Senior Cabin Crew Member, and the flight crew of passenger behavior. | **Response:**<br>1. Tactfully and discreetly refuse to serve the passenger any more alcohol. Offer the passenger non-alcoholic beverages instead.<br>2. Notify other cabin crew, Senior Cabin Crew Member, and the flight crew that the passenger appears to be intoxicated. |

44. There is an alarming rise of sexual assault on flights. Indeed recently, on April 26, 2018, the U.S. Department of Justice's Federal Bureau of Investigation alerted the public about the rising incidents of sexual assault aboard aircraft.[1] FBI Special Agent David Gates, who is based at Los Angeles International Airport (LAX) and regularly investigates these cases, stated that "even one victim is unacceptable. He reported, "... seeing more reports of in-flight sexual assault than ever before." In fiscal year 2014, 38 cases of in-flight sexual assault were reported to the FBI. In 2017, that number increased to 63 reported cases. "It's safe to say that many incidents occur that are not reported," said Gates.

45. Caryn Highley, a special agent in the FBI's Seattle Division who investigates crimes aboard aircraft, further stated, "Unfortunately, people don't think things like this happen on airplanes." She continued, "There is a perception on an airplane that you're in a bubble of safety." Yet the FBI's April 26, 2018 report captured Aubrey Lane's ordeal, stating, "[b]ut particularly

---
[1] https://www.fbi.gov/news/stories/raising-awareness-about-sexual-assault-aboard-aircraft-042618

on overnight flights, where people may consume alcohol or take sleeping pills, and a dark cabin and close-quarter seating can give the perception of privacy and intimacy, offenders are tempted by opportunity."

46. In most cases, when assaults are reported to the flight crew, law enforcement on the ground will be notified and will be waiting to respond when the plane lands. If law enforcement is not able to respond on the ground, victims are encouraged after landing to contact the nearest FBI office. If alerted in advance, FBI agents can be on hand when the plane lands to conduct interviews and take subjects into custody. FBI victim specialists can respond as well, because victims of federal crimes are entitled by law to a variety of services. "It doesn't matter when you report an in-flight sexual assault-we take it seriously, and we will pursue it," Gates said. "But after the fact, these cases are much more difficult to prove."

47. Investigators point out that offenders take advantage of the fact that some victims might not report an incident because they are embarrassed, don't want to cause a scene, or try to convince themselves the assault was accidental.

48. "These are not accidents," Gates said. "We see the same pattern of behavior over and over again."

49. This problem has not gone unnoticed by the airlines and their flight attendants. "One in five flight attendants has witnessed a passenger being assaulted or had an assault reported to them, according to a 2017 survey of nearly 2,000 flight attendants."[2] However, the vast majority of flight attendants have no specific training regarding sexual assault, the survey found. [3]

---

[2] Paul, Kari #Metoo reaches 35,000 feet as passengers and flight attendants speak out, https://www.marketwatch.com/story/the-metoo-movement-has-now-reached-35000-feet-2018-05-23-12103010, May 28, 2018 12:29 p.m. ET.
[3] *Id.*

## FIRST CLAIM OF RELIEF
## NEGLIGENCE
## (Against Defendant)

50. Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

51. Pursuant to 14 C.F.R. § 121.575, airlines have a duty not to "serve any alcoholic beverage to any person aboard any of its aircraft who . . . [a]ppears to be intoxicated " *Id.* at §§ (b)(1).

52. Delta owed Plaintiff the foregoing duty not to serve his assailant alcoholic beverages when it knew or, through the exercise of reasonable diligence, should have known, that her assailant was intoxicated.

53. Defendant blatantly disregarded its duty

54. Defendant breached its duty to Plaintiff by serving alcoholic beverages to an already obviously intoxicated passenger, without regard to the safety and well-being of the other passengers on the aircraft, including Plaintiff.

55. Knowing the clear dangers of intoxication and the sexual assaults threats, DELTA AIR LINES offered no protection to Plaintiff JOHN DOE, nor provided any of the enhanced common carrier duties, despite the verbal warnings of the Intoxicated Passenger and the obvious obnoxious, aggressive, threatening, and intoxicated behavior of said passenger.

56. The Intoxicated Passenger should never have been allowed to board this flight given her visible intoxication. First, DELTA AIR LINES gate agents failed to recognize the dangers of the Intoxicated Passenger posed to the safety of the crew and passengers and allowed said passenger to board. Second, the DELTA AIR LINES flight crew failed to take proper steps to recognize the Intoxicated Passenger's visible intoxication or just ignored his visible intoxication

and allowed said passenger to find her seat. This failure on the part of the DELTA AIR LINES ground and flight crew was negligent and this negligence was a proximate cause of the Plaintiff's injuries and damages as alleged below.

57. In addition to the negligence as alleged above, DELTA AIR LINES continued to over-serve the Intoxicated Passenger with alcohol even as she became increasingly more intoxicated, belligerent, and dangerous to Plaintiff, JOHN DOE.

58. Plaintiff, JOHN DOE, was harmed due to the negligence, careless and/or recklessness of the defendant DELTA AIR LINES, Inc. its agents, servants and/or employees.

59. As a common carrier and/or commercial airline carrier, Defendant DELTA AIR LINES, INC. owed a duty of care to its passengers, including, Plaintiff, JOHN DOE, to ensure safe travel. As an air carrier, Defendant DELTA AIR LINES, INC. also owed regulatory duties to ensure safe travel of its passengers. Defendant DELTA AIR LINES, INC. breached the foregoing duties of care owed to Plaintiff as follows:

    a. In particular, Plaintiff, JOHN DOE was physically and sexually assaulted due to Delta Airline's actions and inactions which contributed to the assault;

    b. Defendant DELTA AIR LINES, INC. allowed a visibly intoxicated Passenger to board the aircraft in violation of Title 14 Code of Federal Regulations §91.17(b) and §121.575(c);

    c. Defendant DELTA AIR LINES, INC. continued to serve Alcohol to the Intoxicated Passenger in violation of Title 14, Code of Federal Regulations §121.575(a), as well as the International Air Transport Association's *Guidance on Unruly Passenger Prevention and Management and Guidance on the Safe Service of Alcohol on Board*;

13

d. Defendant DELTA AIR LINES, INC. failed to fulfill its regulatory duties as described above;

   e. Defendant DELTA AIR LINES, INC. ignored the warning signs of sexual assault, drunkenness, and the threat posed by the Intoxicated Passenger, even after the flight crew was directly informed of the Intoxicated Passenger's behavior and the threat she posed by Plaintiff, JOHN DOE.

   f. Defendant DELTA AIR LINES, INC. failed to properly train its cabin crew on the subject flight to contend with drunk passengers, such as Intoxicated Passenger, as well as to protect passengers from sexual assault.

   g. Defendant DELTA AIR LINES, INC. failed to properly train its ground crew at Athens, Greece Airport to contend with drunk passengers, such as the Intoxicated Passenger, and to refuse them passage in order to protect passengers from sexual assault or other violent crimes.

60. As a direct and proximate result of Defendant's breach of its duty owed to Plaintiff, Plaintiff has suffered injuries and damages and is entitled to the relief set forth more fully herein.

## SECOND CLAIM OF RELIEF
## BREACH OF CONTRACT
## (Against Defendant)

61. Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

62. As a common carrier transporting passenger for a fee, Defendant DELTA AIR LINES, INC. contracted with its passengers, including Plaintiff, to provide reasonable safe and secure air transportation.

63. Pursuant to its contractual obligations, including express and implied warranties, Defendant DELTA AIR LINES, INC. had a duty to reasonably monitor the behavior and condition of its passengers in order to protect its crew and passengers. Additionally, Defendant DELTA AIR LINES, INC. had a duty to properly train and instruct its ground and flight crew on the procedure for identifying visibly intoxicated passengers, denying the opportunity to board a flight as well as the safe serving of alcohol to its passengers.

64. Defendant, DELTA AIR LINES, INC. failed to deny boarding to the visibly intoxicated passenger in violation of Title 14 Code of Federal Regulations §91.17(b) and §121.575(c) as well as their internal policies and procedures in their commitment to providing a safe travel experience for their customers.

65. Defendant, DELTA AIR LINES, INC. continued to serve alcohol to the Intoxicated Passenger in violation of Title 14, Code of Federal Regulations §121.575(a), as well as the International Air Transport Association's Guidance on *Unruly Passenger Prevention and Management and Guidance on the Safe Service of Alcohol on Board* as well as their internal policies and procedures in their commitment to providing a safe travel experience for their customers.

66. Defendant DELTA AIR LINES, INC.'s failures to perform pursuant to its contractual obligations, including express and implied warranties, and its contract for carriage, resulted in Plaintiff's severe mental, emotional, physical, and psychological injuries, and resulting expenses, losses and damages, the amount of which is undetermined at this time.

## THIRD CLAIM OF RELIEF
## PUNITIVE DAMAGES
### (Against Defendant)

67. Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

68. Defendant. DELTA AIR LINES, INC. was aware of the likelihood of sexual assault upon its passengers occurring on their flight. Additionally, DELTA AIR LINES, INC. was aware that the likelihood of allowing drunk passengers to board and the continuing to over-serve its passengers who exhibit the warning indicators from its International Air Transport Association's *Guidance on Unruly Passenger Prevention and Management and Guidance on the Safe Service of Alcohol on Board* put passengers such as Plaintiff, JOHN DOE at an increased risk of being assaulted.

69. Defendant, DELTA AIRLINE, INC. was aware of increasing incidents of sexual assault on board commercial aircraft but did not offer training to its cabin crew of the dangers and warning signs to protect its passengers.

70. Defendant, DELTA AIR LINES, INC. was aware of or should have been aware of the intoxicated passenger on the subject flight and therefore breached the foregoing duties of care owed to Plaintiff as follows:

    a. When its ground crew allowed the Intoxicated passenger to board the subject flight in an intoxicated state;

    b. When its flight crew allowed the intoxicated passenger to take her seat in an intoxicated state;

    c. When the intoxicated passenger requested to be served alcohol prior to take-off;

d. When the intoxicated passenger ordered and was served alcoholic beverages while she was in an obvious intoxicated state;

    e. When the intoxicated passenger ordered more alcoholic beverages a short time later;

    f. When the intoxicated passenger was becoming louder, more vulgar, and more belligerent as the flight continued and

    g. Failure to act in a reasonable manner when directly warned by the plaintiff of the danger the intoxicated passenger posed to Plaintiff, JOHN DOE.

71. Defendant DELTA AIR LINES, INC.'s actions and omissions constituted willful or wanton negligence, and/or recklessness, and/or manifested a conscious disregard and willful indifference to the safety of its passengers, and/or conduct so reckless as to amount to such disregard.

72. Defendant DELTA AIR LINES, INC.'s willful, wanton and/or reckless conduct was the direct and proximate cause of the behavior leading to and sexual assault of Plaintiff, JOHN DOE, and the resulting injuries and damages suffered by Plaintiff, By reason of the foregoing, Defendant DELTA AIR LINES, INC. is liable to the Plaintiff for punitive damages in a sum to be determined by a jury at trial.

**FOURTH CLAIM OF RELIEF**
**FOR A VIOLATION OF N.Y. EXEC. LAW**
**ARTICLE 15 § 296**
**(Against Defendant)**

73. Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

74. Executive Law § 296(2)(a) provides: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or

employee of any place of public accommodation . . . because of the race, creed, color, national origin . . . directly or indirectly, to refuse, withhold from or deny to such person any the definition of "a place of public accommodation" specifically includes public conveyances operated in the air. See N.Y. Exec. Law § 292 (defining the term "place of public accommodation" as including "all public conveyances operated on land or water or in the air"); see also South African Airways v. New York State Division of Human Rights, 64 Misc. 2d 707, 709, 315 N.Y.S.2d 651, 652 (Sup. Ct. N.Y. County 1970); (noting that Executive Law 296 "mak[es] it unlawful to discriminate 'directly or indirectly' against a person because of his race, in a 'place of public accommodation,' which obviously includes airplanes").

75. The pilot, flight crew, and gate agents for the subject flight were at all relevant limes agents and / or employees of Defendant DELTA AIR LINES, Inc.

76. Defendant is liable for the unlawful acts of its agents and employees directly under the doctrine of *respondeat superior*.

77. The Defendant Delta staff members never found a passenger to exchange seats with Plaintiff. Moreover, the Delta staff members discriminated against Plaintiff because of his gender because they would not timely accommodate Plaintiff's request to switch seats, or find a suitable alternative. Any other similarly situated female passenger would not have been forced to go back and sit down next to her assailant.

78. Defendant treated Plaintiff differently because of his male gender by forcing him to continue sitting next to his assault and then forcing him to sit in a hallway on the subject flight.

79. The Defendant Delta staff members knew what was going on, but assumed Plaintiff could handle the situation because he is a male.

80. Defendant's actions were intentional, malicious, willful, wanton, callous and showed reckless disregard for plaintiff's civil rights. and have directly and proximately caused plaintiff financial injury and humiliation, mental pain, and suffering.

81. Defendant violated all applicable sections of NYSHRL.

82. Defendant violated NYSHRL as set forth herein.

83. Defendant has subjected Plaintiff to discrimination because of his sex.

84. Plaintiff's sex has been a determining factor in Defendant's subjecting of Plaintiff to discrimination.

85. As a result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages

86. As a result of Defendant's unlawful conduct, Plaintiff is entitled to all remedies available for violations of the New York State Human Rights Law, including compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## **DAMAGES**

87. As a result of aid negligence, Plaintiff was injured.

88. As a result of said negligence, Plaintiff was seriously injured.

89. As a result of said negligence, Plaintiff was permanently injured.

90. As a result of said negligence, Plaintiff suffered great pain, agony, and mental anguish and in the future shall continue to suffer from same.

91. As a result of said negligence, Plaintiff was forced to expend sums of money on medical treatment and in the future shall continue to expend money on same.

92. As a result of said negligence, Plaintiff was deprived of his enjoyment of life, pursuits, and interests and in the future shall continue to be deprived of same.

93. As a result of the foregoing, Defendant is liable to pay full, fair, and reasonable damages to Plaintiff.

WHEREFORE, Plaintiff demand judgment against Defendant DELTA AIR LINES, INC. in an amount to be determined at trial, together with interest, costs, and disbursements of this action.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York
February 7, 2023

                MARK DAVID SHIRIAN P.C.

By: _____
Mark D. Shirian, Esq.
*Attorneys for Plaintiff*
JOHN DOE
228 East 45th Street - Suite 1700-B
New York, New York 10017
Tel.: (212) 931-6530
Fax: (212) 898-0163
Email: mshirian@shirianpc.com